UNITED STATES *v.* S. H. KRESS & CO., FRANK P. DOW & CO., INC., F. W. WOOLWORTH CO., IMOTO BROS., MOGI, MONONOI & CO., INC. (No. 3884)[1]

---

[1] T. D. 47764.

United States Court of Customs and Patent Appeals, June 10, 1935

*Joseph R. Jackson,* Assistant Attorney General (*John J. McDermott* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellees.

[Oral argument May 29, 1935, by Mr. Jackson and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court, Third Division, involving the interpretation of paragraph 211, Tariff Act of 1930, which reads as follows:

PAR. 211. *Earthenware* and crockery ware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthenware, and cream-colored ware, terra cotta, and stoneware, including clock cases with or without movements, pill tiles, plaques, ornaments, charms, vases, statues, statuettes, mugs, *cups,* steins, lamps, *and all other articles* composed wholly or in chief value of such ware; * * * *painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 10 cents per dozen pieces and 50 per centum ad valorem.* (Italics ours.)

The merchandise involved consists of decorated earthenware designed for table and household use, which merchandise is represented by 35 exhibits, and, owing to the question involved here, naturally divides itself into the following groups:

Group 1 includes Exhibits 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29(b), 30, 31, 32, 34, and 35, and consists of earthenware receptacles with covers, such as teapots, sugar bowls, cereal jars, cookie jars, flower pots and bases, candy jars, juice extractors, and other items referred to later herein. Exhibit 7

contains a body, top, and four ash trays which are disposed between the top and the bottom, but are parts of the whole article—a "clown" smoking set when assembled. This group also includes cups and accompanying saucers to match. Exhibit 12 has a base or bottom but no top covering. Collective Exhibit 32 consists of a teapot with a cover and one cup, which cup is representative of seven others which belong to the set but which were not introduced in evidence.

Collective Exhibit 29 may be divided into three parts, namely, 29(a), 29(b), and 29(c). Exhibit 29(c) involves two separate units, a salt shaker and a pepper shaker. Appellees make no claim as to the propriety of regarding this exhibit as comprising two pieces, and the decision of the trial court did not expressly refer to them, and they will not be considered here. Exhibit 29(a) represents a refrigerator set consisting of a tier of three different bowls, with one cover, so arranged that a superimposed bowl makes a top for the lower bowl. Exhibit 29(b) is a butter dish and cover.

The second group consists of Exhibits 3, 21, and 33, which are cheese sets comprising a plate, a jar, and a cover for the jar.

The third group, Exhibits 14 and 18, are incense burners consisting of two parts which are used together and comprise a base upon which is placed a top which is in the form of a pagoda with ventilating holes represented by the windows of the pagoda.

The collectors at the various ports throughout the United States where this merchandise was entered, assessed duty on the merchandise under the provisions of paragraph 211 as "earthenware * * * or other articles * * * painted, colored (etc.)" at "10 cents per dozen pieces and 50 per centum ad valorem."

The parties are agreed that the merchandise is dutiable under the above-quoted provision. The controversy arises as to the manner of applying the provision "10 cents per dozen pieces." The collectors, in determining the number of pieces, counted each part and included in the count the detachable bottoms, tops, and other parts, as well as the bodies, of all earthenware which was made up of more than one piece and also counted a saucer as one piece and a cup which went with it as one piece.

According to a stipulation, entered into by the parties litigant, but one protest, one report of the collector, and one answer to the protest, were placed in the record and the others were omitted, since they all involved the same basic question. In the protests is contained the following language:

The reason for this protest is that the separate pieces have been broken up into their component parts, and each component part thereof has been counted as a separate piece in the ascertainment of duties, whereas the complete piece, embodying all its component parts, should be the unit to be counted for the purpose of ascertainment and assessment of duties at 10¢ per dozen pieces.

The trial court sustained the protests in part and held that the merchandise represented by group 1 and group 3 should be classified as units, that is to say, the covers, bottoms or other similar part or parts of the merchandise represented by this group of exhibits should not be counted as separate parts, but that tea pots, sugar bowls, cereal bowls, etc., with their covers should be counted as units or entireties and as one piece—not two or more pieces. It held that the merchandise represented by Exhibit 29 (a), the refrigerator set, should not be counted as a unit but that the top bowl and the cover for the same should be counted as one unit, and each additional bowl counted separately, and that a cup and a saucer making up an exhibit and listed in group 1 should also be counted as one piece. As to the second group, comprising the cheese sets, the court held that in each instance the cover and the jar constituted one unit, and the plate another unit.

The trial court, as to Exhibits 14 and 18, followed its former decision in *Woolworth Co.* v. *United States*, T. D. 46162, 63 Treas. Dec. 244, where incense burners similar to the merchandise represented by Exhibits 14 and 18 were held each to be entireties and countable each as one piece.

It is the contention of the Government that the trial court erred in sustaining in part the protests of appellees and in holding, in substance, that the merchandise represented by the exhibits in groups 1 and 3 should be counted as entireties—as one piece—and in not holding that each component part of the merchandise represented by the other exhibits should be counted as a piece in making application of the controverted provision in paragraph 211. The Government urges that there is no ambiguity in paragraph 211, in its application to the merchandise at bar and that because of this fact, no interpretation of the same is necessary and that a consideration of extraneous facts relating to said provision is not warranted. However, it is stated by the Government that if interpretation is required, the legislative history of the provision and the weight of the testimony of the witnesses support the conclusion that the collectors' count of each individual part or piece was in accord with the intent of Congress. Both sides referred to different phases of the legislative history which will be hereinafter discussed.

We are of the opinion that the collectors' count of each individual piece of the earthenware involved in the various entries was the proper application of the controverted provision. We base this conclusion chiefly upon the context of paragraph 211. It will be noticed that the paragraph calls for "all other articles * * * 10 cents per dozen pieces." It seems obvious that "articles" and "pieces" are not used in a synonymous sense, since if it was the purpose of Congress to treat each article, each entirety, with its several pieces,

as one piece, it would have been unnecessary to have used the term "pieces" at all. The paragraph could well have read "and all other articles  *   *   *   10 cents per dozen."

Appellees here, and the trial court in its decision, have stressed the fact that in the chinaware paragraph, 212, Congress provided:

PAR. 212.  *   *   *   In addition to the foregoing there shall be paid a duty of 10 cents per dozen *separate pieces* on all tableware, kitchenware, and table and kitchen utensils.  *   *   *   (Italics ours.)

and state in substance that Congress, therefore, had distinguished between "pieces" in paragraph 211 and "separate pieces" in paragraph 212.

We are not convinced that the use of the term "separate" in paragraph 212 was not redundant. These paragraphs, in their present form, did not find their way into the act at the same time during its progress through the legislative body, and nothing has been shown to us to indicate that Congress intended one kind of count of the pieces in paragraph 212 and another kind of count in paragraph 211. Moreover, it is difficult to apply the term "separate" logically so as to bring about the result argued for by appellees, since it seems obvious that "10 cents per dozen pieces" in paragraph 211 would mean separate pieces, since if they are pieces, under the common meaning of that term, they must be separate pieces.

Both sides submitted the testimony of a number of witnesses, the importer eight, and the Government four in the case at bar, and the record in *F. W. Woolworth Co.* v. *United States*, protest 467376–G, the subject of the decision of the Customs Court in T.D. 46162, involving incense burners, was also made a part of the instant record. The record in the *Woolworth* case contained the testimony of five witnesses. It is conceded by all parties that there was no attempt to prove a commercial meaning of the term "pieces" which differed from its common meaning, and, as we understand it, the testimony of the witnesses was submitted mainly for the purpose of showing the trade practices in relation to earthenware, and in some instances to chinaware.

We have carefully examined the testimony of each witness. There is much of it that has little relevancy to the real issue at bar, and certainly none of it can be regarded as controlling in the determination of the common meaning of the term in controversy. We think, however, that it was proper for the trial court to consider the use of the term "pieces" in both the domestic and foreign trade, since the use and application of the term by the trade might throw some light upon the sense in which Congress used it.

The importers attempted to show and some of their witnesses stated that in the trade, both foreign and domestic, sugar bowls, tea pots, or other similar articles, with a cover, were sold and dealt in

as sugar bowls, and tea pots, as entireties, and that they were sold and referred to without regard to their consisting of more than one piece. Appellees' witnesses, however, do not deny that a different practice prevailed where a dinner set or other similar set of dishes was sold and that, as to sets, reference was made to them as "a 100-piece set", "a 125-piece set", etc. It is the position of appellees that no such merchandise is involved in the instant importations, and that where the goods are dealt in by the dozen, a dozen pieces would be a dozen units or entireties.

The testimony of the Government's witnesses tends to show, we think, that detachable covers, bottoms, and like pieces of earthenware, are always counted as a piece if sold in sets, and that the term "pieces" as used in the trade covers and includes such component parts as lids, covers, and bottoms. Some of the testimony of the Government's witnesses is to the effect that in the trade a sugar bowl or other covered dish is sold under the term "sugar, covered", "covered dish", etc., without the necessity or occasion for either considering or specially referring to the parts which are here in controversy. The testimony of the Government's witnesses shows that for replacement purposes, tops and bottoms and other similar parts have a value of about one-third of the whole and that such valuation prevails by reason of the fact that replacement parts are carried and sold; that open stock dealers, such as chain stores, handle lids and separate parts and will sell either a cup or saucer separately or both together. As shown by the record, parts like tops and bottoms are imported for the purpose of replacement. As we understand it, there is no contention on the part of appellees here that when so separately imported each should not be regarded as a piece.

If the tops and bottoms, and each cup and each saucer, when imported in sets or imported for replacement are to be counted each as a piece, it is difficult to understand how a fair and uniform practice could be brought about by making a distinction between earthenware imported in sets and earthenware imported on the open stock plan, as is made by appellees and the trial court, since it would seem to follow that the collector would be required to exact the payment of a duty from the importer of a set which would not be exacted from the importer of open stock, although both importations might include the same kind of articles. We cannot agree that Congress meant one rule to apply to sets and another to open stock.

There are some features of appellees' testimony which we feel call for consideration here in connection with the legislative history of the provision. The Government has pointed out that when this provision was being considered by Congress, much information was furnished by importers and domestic manufacturers with reference to the production of earthenware and chinaware in the United States,

and that in the hearings before the legislative committees when the act was in its course of passage through the Houses of Congress, the importers complained about the insertion of the new provision "10 cents per dozen pieces", as it appears now in said paragraph 211, which was a new provision in this kind of legislation, for the reason that when the count was made in applying the provision, each cup, each saucer, and each cover and bottom or similar part for an earthenware article would be counted as a piece, and that such articles were frequently made up of two or more pieces and that this would result in some instances, as in a mustard pot, lid, and spoon, of applying a duty to the article of 30 cents per dozen articles plus the ad valorem rate. The Government pointed out that notwithstanding these representations the provision was not subsequently changed so as to meet the wishes of the importing trade. The Government also points to the fact that the above representations were made to the Senate Finance Committee by H. B. Fowler, who there was representing S. H. Kress & Co., one of the appellees here. Fowler did not testify before the trial court in the instant case, but Harry W. Smith, buyer for appellee, S. H. Kress & Co., did testify and attempted to sustain the contentions of appellees here that a cup and a saucer should be counted as one piece. He did state, however, that his company bought cups separately but not saucers. Fowler testified in the *Woolworth Co.* case, *supra*.

According to the testimony in the record, Julius Rosenfeld, one of appellees' witnesses, and a member of the firm of Fisk, Marks & Rosenfeld, testified before a sub-committee of the Committee on Finance of the United States Senate during the consideration of the provision in controversy and there stated that a mustard bottle with its cover and a spoon were three pieces and that:

> \* \* \* It is customary in the china and earthenware trade to count all separate pieces, and the rate applied on actual count consequently brings the duty out of all proportion to the value of the wares. \* \* \* Cups and saucers, covers to sugars, covered jugs and mustard pots, covered butter dishes, and many other articles are counted as two or more pieces.

As we view the testimony of appellees' witnesses, there is nothing contained in the same with reference to trade practices which requires a holding that the collectors' count was wrong, and even if isolated statements in the testimony had the tendency of showing that it was not the trade practice to include lids and covers in the term "pieces", under the circumstances above set out, we would not regard it as controlling on the question of Congressional intent.

Appellees' testimony is certainly, to say the least, not strengthened, by the circumstances to which the Government has referred as being one attitude on the part of the importing interests before Congress when the act was being prepared, and a contradictory attitude in the courts when the act is being construed.

The importers contend that the legislative history supports the conclusion that Congress did not intend by the use of the term "pieces" to give the controverted provision the meaning which the collectors have given it, and point to the fact that the Senate Finance Committee drafted a proposed amendment to the House bill which is disclosed in the "Confidential Committee print" of August 19, 1929, where the phrase "10 cents per dozen pieces" was stricken out and the following language was inserted:

In addition to the foregoing there shall be paid the following duties: On cups, saucers, and plates, valued at not more than 50 cents per dozen, 10 cents per dozen; on cups and saucers imported as units, valued at not more than 50 cents per dozen units, 10 cents per dozen separate pieces.

and that this amendment was not adopted and that, therefore, as to cups and saucers they must be regarded as entireties in applying the controverted provision.

We are not persuaded that the above circumstance even tends to support the contentions of appellees. It is obvious that at one time the Senate committee contemplated narrowing the "10 cents per dozen pieces" provision and making it apply only to certain articles. The fact that the Senate failed to narrow the scope of the provision and rejected the language which did do so, in the particulars above indicated, can hardly be regarded as being an indication that it did not contemplate that each individual piece should be counted in making application of the "10 cents per dozen pieces" provision which it left unchanged in the bill as it came from the House.

Tariff laws, like all other laws, should, if possible, be given such a construction that anomalous results will not flow therefrom. According to appellees' contention, the importer of 10 dozen cups and saucers would, in addition to the 50 per centum ad valorem duty, pay $1 while another importer who imported 10 dozen cups without saucers would pay the same duty. In our opinion such a result was not intended by Congress.

The Government has introduced various catalogues, price lists, etc., involving chiefly American-produced earthenware which not only show a uniform practice of counting individual pieces in sets, but also show such an article as a baker set, consisting of a bowl, cover and bottom, also being referred to as a "three-piece covered baker set."

The record as a whole makes it clear that in the trade, both domestic and foreign, the term "piece" is often applied to a lid or a bottom of a container or the like, and we are of the opinion that when Congress, in paragraph 211, provided a tariff duty on "articles" involving a counting of the "pieces", it intended that each piece, even though it be a cover or a bottom, or a saucer unaccompanied by

a cup, should be counted in making application of the "10 cents per dozen pieces" provision.

It is our conclusion that the trial court was in error to the extent that it sustained the protests of appellees in part. We think the collectors' count in applying the provision was correct, and, therefore, the judgment of the United States Customs Court is *reversed*.

GARRETT, Judge, concurs in the conclusion.